First case on our calendar is Atipoe v. Whitaker, an immigration case, and we have an amicus arguing from the American Immigration Council. We'll start with a petitioner. Thank you, Your Honor, and may it please the Court. Petitioner Emily Atipoe is a 20-year permanent resident of the United States and a father to two U.S. citizen children who diligently pursued his rights in the face of extraordinary and exceptional circumstances over three and a half years of detention. But for the immigration judge's erroneous analysis of his statute of conviction, an error which is uncontested here, Mr. Atipoe would be eligible to stay in this country. He made multiple pro se and counseled filings to the Board of Immigration Appeals, appealing that error, but even after the Board requested a complete merits briefing, it dismissed his appeal as untimely, with one Board member notably dissenting. That dismissal is legally erroneous. The Board could and should have accepted that appeal by either of two distinct procedures equitable tolling of the 30-day deadline set forth at 8 CFR 1003.38B or self-certification under 1003.1C. Mr. Atipoe asked for the former, but the Board, without explanation, analyzed his request under the latter. And as amicus counsel is going to address... What is the standard for each? In terms of if the BIA were to have considered the latter, what would have been the standard? Well, I think this Court addressed in Vila Estrada that the Board has discretion, and in large part an unreviewable discretion, to reach certification decisions. However, the Board, if it denies certification under a misperception of the law or a misunderstanding of its own jurisdiction, it's appropriate to remand. Again, that comes from Vila Estrada, 817 F.3rd.71 Note 1. So that is an error of law that this Court can review. Three things, Your Honor, in the certification analysis. The Board misperceived the law governing pro se filings that's set forth by this circuit. It misperceived the standard to apply to Mr. Atipoe's motion, and it failed to consider the divisibility of the statute of conviction under the correct law. What is the right standard? I'm sorry? What is the right standard? I mean, you just said it misperceived the right standard. What is the right standard? Yes, Mr. Joliot. So, first, pro se filings are to be construed liberally with special care to ensure that technical procedural requirements don't prevent them from asserting claims. And in this case, the Board opinion said that an appeal was filed two months after the filing deadline. It ignores papers that Mr. Atipoe sent two days after that deadline and two weeks after that deadline. So, first, the standard requires a special care for pro se litigants. Those papers were returned to Mr. Atipoe with a form to fill out after the deadline had passed for a notice of appeal. That's mishandling of a pro se litigant under this Court's rulings. Wait a second. The regulation says that it must be filed within 30 days. It wasn't filed within 30 days. I think no party disputes that. We have said that self-certification is a form of discretionary review that's not reviewable by this Court. And the regulations that the agency points to have been in place since the 1990s. And the general approach to treating the 30-day period as mandatory and jurisdictional has been in place for decades. So, where did the agency err? Well, Judge Kearney, I would point to this Court's decisions in the Kahn and Son cases. As you point out, the certification regulation has been present for a long time. But in both the Son and Kahn cases, this Court remanded to the Board of Immigration Appeals to apply the right analysis to timely filing. Those again were cases where it was also uncontested that the papers came in a few days after the filing deadline. But in the Son, for example, we said in denying the petitioner's motion to reconsider in this case, the BIA did not acknowledge the existence of any basis on which the running of the limitation for filing an appeal might be excused. It did no more than recite the regulation. There's more here. Your Honor, I respectfully disagree. And I would point to the decision itself because, as you can see, the Board in the last two opinions, I'm sorry, of the penultimate paragraph, merely cites the Son decision, which it says explaining that the Board may hear late filed appeals in unique or extraordinary circumstances. But Your Honor, to be very clear, they did not apply a unique or extraordinary circumstances test in this case. That is what Son mandates and that is not what the Board did. In fact, what the Board purported to do is apply Matter of Lazada, a case for ineffective assistance of counsel, when Mr. Adepow had never alleged that it was a lawyer who assisted him. Judge Loyer, I believe that this, and panel, this decision could be decided on that instance alone. We do not discern exceptional circumstances meriting acceptance of the Respondent's untimely appeal. Absolutely, Your Honor. Exceptional circumstances are a different standard than unique or extraordinary circumstances. Exceptional circumstances are exactly what Judge Carney has noted. That's the discretionary analysis that the Board can self-certify cases under 1003.1c. That is not unique or extraordinary circumstances. That standard— Tell me what the difference is between an exceptional circumstance and a unique and extraordinary circumstance. Well, as this— Describe the difference for me. As this Court has said, exceptional circumstances is something that's charged to the discretion of the Board of Immigration Appeals. It has not set forth what the exceptional circumstances standard is. Unique and extraordinary circumstances comes from a large body of case law regarding equitable tolling, not only in the context of immigration cases, but throughout our court system. Extraordinary— Excuse me. So now, when you're talking about equitable tolling, you're talking about the main statute of limitations, not the self-certification process. I do. However, if the Board believes that it has the authority to subsume the analysis set forth in SUN within the context of a certification analysis, then of course it would have to apply the standard that this Court set forth, unique or extraordinary circumstances. Mr. Adepow was certainly in unique and extraordinary circumstances in the way that he was both provided misleading forms by the Board of Immigration Appeals, and then when he filed his papers, the individual that he asked to assist him misled him and did not file those papers for him. Now I'm confused about your argument. Is your argument that we should—that we have the authority to disagree with the BIA's assessment of what constitutes a unique or an exceptional circumstance? Is that the argument? Your Honor, I would not put the words unique and exceptional circumstances together. That's conflating the two tests. The Board of Immigration Appeals has the authority to self-certify cases in exceptional circumstances, and I am not asking this Court to review that, but to ensure that the proper law was applied in that analysis. Separately, this decision can be reversed because— So when it refers—when the BIA refers, the majority, refers to exceptional circumstances meriting acceptance, what am I to make of that? Why don't I take that at face value, that it considered the standard and determined that there were no exceptional circumstances? Well, Your Honor, I think that the Sun decision is—or excuse me, the Kahn decision is actually quite clear. It says if the Board concludes that petitioner's justification for untimely filing does not present extraordinary or unique circumstances, not exceptional circumstances, it must provide a reasoned explanation for why this is so, and I see no mention of the unique or extraordinary circumstances test until after it's conducted its certification analysis. The Board was given, as I believe Amicus is going to address shortly, the certification authority for the purpose of taking important cases on to itself. That's not a substitute for when a petitioner wants to represent that they have been in unique or extraordinary circumstances, and plainly, Mr. Adepo's argument in that regard was not considered here. I recognize I'm after my time. Right. And you've reserved a couple of minutes for rebuttal, but we'll hear from the Amicus. Okay. Thank you, Your Honor. Thank you. May it please the Court. I'm Trina Rial-Muto on behalf of the American Immigration Council. With the Court's permission, I would like to reserve two minutes for rebuttal. Sure. Thank you. I'll be addressing the regulation at ACFR 1003.38B, which provides that appeals from immigration judge decisions must be filed within 30 days. Now, as an initial matter, Mr. Adepo argued that this deadline should be equitably told before the Board of Immigration Appeals, but in its decision, importantly, the Board stated that it need not address this argument. Because the Board has a duty to consider arguments before it, and did not do so in this case, at a minimum, this Court should remand the case to address the equitable tolling argument. Why shouldn't we presume that the Board's practice of treating this regulation, the 30-day deadline, as mandatory and jurisdictional, which has been in place for years, is the answer? That's why they didn't have to say anything more about it. Okay. So the Board concocted this idea that the appeal deadline cannot be extended in its precedent decision in Matter of Leadoff in 2006. And in that decision, the Board said, hey, we see that there's a statute that provides for 30 days to file an appeal in asylum cases, and we're looking at the language of the regulation, and we're also going to look at the Supreme Court decision in Locke, which is from 1985. And it said, we're going to find that we can't extend this deadline. Was there ever any congressional expression as to this? Right. Exactly. So very interestingly, in that decision, first of all, I would argue that that decision conflicts with this Court's decisions in Sun and Kahn, which necessarily recognize that the appeal deadline is a claim processing rule, because you can't have an exception to a rule if it's in fact jurisdictional. Let me just ask again. So was there any congressional expression with regard to 30 days? Right. So in M. Act 90, in 1990, Congress enacted Section 545D of M. Act 90, and it said the Attorney General must issue regulations with respect to the time for filing appeals. The legislative history of that statute, Congress said, yeah, we think it should be 30 days, with the availability of 90 days upon a showing of good cause. The agency did nothing. In 1995, it bumped the appeal deadline from 10 days to 15 days. And then comes IRA-IRA in 1996, and Congress did two significant things at that point. It enacted a 30-day deadline for appeals, for filing an appeal of an asylum decision, and it also included a provision at 8 U.S.C. 1229 A.C. 5, which said that immigration judges are obligated to inform a noncitizen of the right to appeal. Okay. And then in 1997, Congress, or the agency, enacts the 30-day deadline. I'm sorry, who enacts the 30-day deadline? The agency. The agency does. Bumps it to 30 days. But importantly, the Lee Adopt decision predates the Supreme Court's decision in Henderson, in Union Pacific, and in Holland, all of which tried to course correct the confusion between claim processing rules and jurisdictional rules. Am I right still that Congress never said it's 30 days? Congress didn't. For asylum cases, it did. For everybody else, the provision at 1229 A.C. 5 governs what Congress's intent was there. And is there any reason, if we were to accept your premise that equitable stoppal and allowing some form of equitable stoppal should be, is part of the statute of limitations on filing appeals, is there any reason to think that the unique and extraordinary circumstances test self-certification would not be the same in equitable stoppals? Absolutely not the same. Okay, in Lee Adopt, the board said, hey, we have the certification test that we can apply, and it defines the test for certification as exceptional circumstances. And it said it could be one of two things, extraordinary circumstances or rare events. And it's totally up to the board to decide what those things constitute. Certification is not an adequate substitute for equitable tolling. Because equitable tolling is about the rebuttable presumption that's in favor of tolling. And if the litigant meets the test, the litigant is entitled to tolling of that deadline. And that test is governed by this court's longstanding precedent on what constitutes extraordinary circumstances and due diligence. And importantly, individuals are permitted judicial review of whether or not they met that test. Do you have a view on the question whether an agency can establish its own jurisdictional limits? Absolutely, I mean, I have a view, but I also think most importantly, the Supreme Court has a very strong view, which is set forth in Union Pacific, in which the Supreme Court said that the agency cannot contract its jurisdiction. And that the agency cannot create rules of jurisdictional dimension. And that was echoed by this court's decision in Iovorsky, in which Judge Sotomayor indicated as well that Congress doesn't intend, that the power to establish jurisdictional bars resides with Congress and Congress alone. And you see this court applying that type of logic in its decision in Luna as well. And here, it's very clear that Congress did not intend this regulation to be jurisdictional. If I may ask a further question. Sure. Nonetheless, Congress has legislated, you can stay up there. Congress has legislated numerous times since the late 40s when the agency began to apply this kind of strict rule. And it had an opportunity, didn't it, to change what the agency was doing, if it was unhappy that the agency was treating this as jurisdictional and foreclosing equitable estoppel arguments. What should we take from that inaction? So I would like to make clear that the agency's precedent decision on this came back out in 2006. And we haven't seen immigration acts by Congress. Obviously, that's a huge issue today, coming out since 2006. So that's where- I think the government says that the agency's had this practice. Right. So I would direct the court to the Supreme Court's decision in Manspeaker versus Demarest, in which the court held that despite longstanding administrative interpretations, there's no deference to an agency's construction where that construction conflicts with the statute. And we believe that constructing this deadline as anything but a claim processing rule would conflict not just with the statute, but also with Supreme Court precedent in Holland, Henderson, and Union Pacific. Thank you. Thank you. You now have two minutes for rebuttal. We'll hear from the government. Morning. Good morning. May it please the court, I'm Brett Kenney on behalf of the Attorney General. This court should dismiss the petition for review for lack of jurisdiction, because this court has squarely held that the board's decision not to hear an untimely appeal by certification is committed to the board's discretion by law. Accordingly, this court lacks jurisdiction to consider any challenge to the merits of the board's determination. You're referring to Villa Estrada. Yes, your honor. In Villa Estrada, this court specifically held that the board's decision not to certify an untimely appeal is committed to its discretion by law because there are no standards which govern the board's exercise of discretion. Could you address the equitable estoppel argument? We held in Iovorski in 2000 that the legislation enacted then regarding regulations, which the Congress directed the Attorney General to enact regulations or to reopen the motion to reconsider, that that was subject to equitable tolling. That the regulations there setting a time deadline and a number deadline were subject to exceptions. And part two of that same part of the statute, 545D, addresses timing for administrative appeals. And I wonder if you could tell me what's different about the analysis that then Judge Sotomayor wrote in Iovorski as to D1 versus the instruction in D2 about the Attorney General setting a time period. Why should it be any different? Yes, your honor. In the motion to reopen context, Congress directed that the agency set a time limit for that. And also in the motion to reopen context, the Congress codified the motion to reopen, time limit, and provided for exceptions in to the deadline, the 90 day deadline to file a motion to reopen. The statute doesn't refer to any particular time deadline as to either motions to reopen or time for filing administrative appeals. It just directs the Attorney General to issue relevant regulations. Isn't that correct? Correct, your honor. But it does also provide for a motion to reopen before the board. And in there it provides certain exceptions for untimely motions to reopen, such as changed or extraordinary circumstances in the country of nationality. Wait a second, I'm looking at the statute. I don't see that language in the statute. I don't have the specific motion to reopen statute memorized, your honor. All I read is the Attorney General shall issue regulations with regard to the period of time in which motions to reopen and to reconsider may be offered in deportation proceedings, which regulations include a limitation on the number. It may be filed in a maximum time period. That's it. It doesn't mention exceptions. And yet we held that exceptions needed to be read into that and they needed to be permitted by the Attorney General because of a general presumption in favor of equitable tolling in statutes of limitations. Correct, your honor. And I do know that at least under the regulations that the motion to reopen deadline is subject to exception for. But again, I'm looking for expressions of intent by Congress. I'm not looking to the regulations. I want to know when Congress set a jurisdictional limit on the agency's consideration of administrative appeals. It did not do so. Instead, the deadline on administrative appeals is set by regulation. And that regulation provides only that the board may certify an untimely appeal to itself. And which is why this court held in Villa Estrada v Lynch that there are no standards governing that. No, but I know, but that was looking at the certification, the self-certification process. It wasn't answering the question about whether one should construe the statute to foreclose the use of equitable estoppel or to require the use of equitable estoppel, and the agency has taken the position that the Attorney General has foreclosed that method of review. But I'm looking for what Congress intended. Right. What can you point me to? There is no express congressional intent in the terms of the INA. Congress has not legislated. The deadline for administrative appeals, and therefore, Congress has not spoken to what standards or what the board must do in deciding its administrative appeal deadline. Your argument is that the board then has discretion to fill that void. Correct, Your Honor, because there are no standards which govern the board's exercise of discretion, which is what Congress must have intended because it drew the governing law such that there are no standards, which is the necessary implication of this court's holding in Villa Estrada, that that is committed to the board's discretion by law. But are we required to accept the board's view or the Attorney General's view of the board's jurisdiction? Or do you look to Congress typically to establish jurisdiction? Yes, Your Honor, this court is required to accept the board's understanding of its own authority. And the court is also required to defer to the board's own interpretation of its regulations under our- Including on a fundamental issue of jurisdiction. In this case, the board declined to state whether this deadline is jurisdictional. And that makes sense because in this context, there is no meaningful distinction between a jurisdictional rule and a claims processing rule, given that the board has consistently held for at least 70 years, that it has no authority to extend that deadline. So without the authority to extend the deadline, there is no meaningful difference between- It's decided in one sense to, even if we've got jurisdiction, to restrain itself from extending the deadline. It has held that it has not been given the power by Congress to extend the deadline. And so instead of acting outside of its own understanding of the scope of its authority, it has consistently interpreted the regulations as providing an alternative framework for considering untimely- Let me circle back still to my initial question, which is in looking to what Congress said, we said in Yavorsky that the proper reading of the statute 545D from 1990 is to allow equitable estoppel on deadlines with regard to motions to reopen. In the same statute, very short statute, Congress said that the Attorney General should prescribe times for filing of administrative appeals, and the language is very similar. Neither speaks to exceptions. Why shouldn't the Yavorsky analysis control here with respect to administrative appeals? Well, as an initial matter, the board itself has never stated whether the deadline for motions to reopen is subject to equitable tolling, but this court has, Your Honor. And so the board hasn't fully explained why the motion to reopen context does permit of exceptions. But it has consistently stated that in the administrative appeal deadline context,  In this decision, the board didn't deal with the equitable tolling argument made by the petitioner, isn't that correct? They didn't deal with it at all. So they couldn't have given a reasoned explanation because they didn't deal with it at all. They did say that they did not have to address the jurisdictional nature of the deadline because they declined to certify. Isn't that procedural error if they didn't deal with the equitable tolling argument raised by petitioner? They did proceed under the framework which they have interpreted. Certification, but not equitable tolling. Yes, Your Honor. And that's because the board has consistently held that it doesn't have the authority to extend the deadline. So discussing needlessly labeling something as jurisdictional or claims processing could not have altered the outcome of this case. Is this a harmless error argument? It is true that they didn't, and it's troubling to me, that there was a argument squarely presented. And they only dealt with the first argument, not the equitable tolling argument. And I gather what you're saying is that because of what they've done in the past, we should just presume that they did the same thing sub silencio here. Yes, Your Honor, in that the board declined to address an issue that it could not, that ultimately had no, could not impact the outcome. They could have said that. We have to guess what they were thinking, because they said nothing about equitable tolling. That's true. They declined to, or they did not address the issue, because they found that certification was not warranted. So they went straight. And you can tell us here that in every case, prior to this one, they took the same position with respect to requests for equitable tolling. No, Your Honor, I can't make that claim, because I don't see all of the decisions from. So if that's true, then why don't we just remand this back? This court could remand for a more explicit statement, but it should not do so, because the board has consistently said that it has. But you told me, you just represented to me that you can't tell me that it's consistently done that. Well, it's consistently said that it has no authority, since it's published decision in a matter of Durfee's in 1948, and then again in matter of Leodov in 2006. So it's published authority states that it has no authority to extend the administrative appeal deadline. Do we see in other contexts BIA opinions that contradict each other? And you've seen that as well, correct? Yes, Your Honor. Are you aware of anywhere in the country any contradictory opinion? I am not aware of any of those opinions. And I think that makes sense, because the board proceeds, in my experience, under its certification framework, and that framework is not governed by any standards. And so whether to certify an untimely appeal or not, the board has no settled course of adjudication, which is- That by itself strips us of, it's really, it's totally discretionary then, is your argument. Correct, Your Honor, which is what this court held in Villa Estrada v. Lynch, that neither the certification regulation nor any other regulation or statute provides any standard for the board's exercise of discretion. Which means that it is committed to the agency's discretion by law under the Supreme Court's decision in Heckler v. Cheney. And judicial review is expressly- A decision by the BIA in any of these cases, is your argument. Correct, Your Honor, and that's pursuant to the explicit terms of the Administrative Procedure Act, which provides that judicial review is not available in decisions, agency actions that are committed to the board's discretion or to the agency's discretion by law. And then the Supreme Court interpreted that phrase in Heckler v. Cheney and said that where there are no standards to govern the agency's exercise of discretion, judicial review is unavailable because there are no standards to assess the board's determination. And accordingly, if the court has no further questions, then the government would respectfully request that the petition for review be dismissed for lack of jurisdiction. Thank you, counsel. Thank you. We'll hear first from Mr. Moffa. Sorry, Your Honor, I said me first. Is that right? Okay, thank you. Your Honor, we entirely agree with your statement that the board did not deal with the equitable tolling argument and looked only at its certification authority. Mr. Moffa, so the question presented now is, so what? We know, it's almost a harmless error analysis. We know that the BIA has dealt with the same issue in the same way. There's no record of any deviation. And in any event, there are no explicit standards that were set by Congress. When I say we know, that's just the argument. And so what? So then, and it may not be ideal, we're in standardless territory. And therefore, that is committed to the full discretion of the BIA, and it strips us of jurisdiction. That is the question. Okay, first I can contest the premise that I believe government has set forth. And I'm surprised that the government would say they don't know of any decisions with a contrary finding as to the extension of deadlines. Amicus and Petitioner both provided them in their brief a long site of cases in which the board has accepted late filed appeals in less compelling circumstances. Pardon me? It's on equitable tolling? They often mention their certification authority, but the board does not. They often say equitable exceptions warranting remand. There are multiple board of immigration cases. Tell us what decision. What's the decision, recent decision from the BIA that says with respect to equitable tolling, we've got authority to toll the period of limitation? I would actually say it's this court's authority that says that tolling is appropriate. The son- I'm asking for a BIA decision. The BIA has tried to subsume the equitable tolling rights of a petitioner into its unreviewable certification analysis. The reason that I cannot provide you a board of immigration appeals statement that the deadline is tollable is because they are trying to avoid addressing tolling, just as they did in this case, by saying certification is sufficient. And it is not. I mean, this court said in the Luna decision, and I would point to page 100 of the Luna decision, that the board cannot contract its own jurisdiction. It cannot remove a petitioner's right to equitable relief simply by saying that the certification decision is sufficient. Judge Loya, you asked what the proper standard is in this circumstance. You said there's no standard to govern. Again, we have the unique case where the board actually affirmatively said they're using the wrong standard. They said we're using a Lozada standard to analyze what happened to this petitioner. And that's not right. SUN is the right standard. And I believe it's important to clarify that that standard sits outside the certification authority. If the board could simply deny certification to any motion for an extension of time before it, then the issues raised to this court in SUN and CON and the remand in that case would have been moot. What would have been the point of remanding the case to the Board of Immigration Appeals in SUN and CON, which has unfettered and unreviewable authority, to deny a late filed appeal? That can't be right. There have to be equitable exceptions, and I believe amicus will address this further. Can I ask one question? So equitable exceptions, those would be other than exceptional and unique circumstances. Is that right? That's right. There's a body of case law and decisions from the Supreme Court down that identify equitable exceptions that must be available. Extraordinary circumstances and diligence are one of those exceptions, but they're not the only one. Thank you, Counsel. We'll hear from- Thank you, Your Honor. Thank you. I just want to follow up on that. The certification process and what that standard is, is entirely distinct from the equitable tolling standard that we- So one is extraordinary or unique circumstances, that's equitable tolling? So, Leodov defines exceptional circumstances for certification as extraordinary or rare circumstances. But the standards that govern what constitutes that are entirely discretionary, right? But for tolling, the standard is exceptional circumstances and due diligence. And that is governed by what this court and other courts have said with respect to what constitutes an extraordinary circumstance and what constitutes due diligence. So there are standards that control and that this court can review in an equitable tolling analysis. I just want to, back to Judge Carney's questions with respect to the Iovorsky decision and MEC 9545D. That is the same provision that we are saying provided where Congress indicated to the agency you need to provide a deadline. And it wasn't just this court that recognized that the motion to reopen deadline was subject to tolling. It's all the circuits that have said that, because the board refused to issue a decision on this very point. And that is exactly what is happening here with respect to tolling of the appeal regulation. I mean, we would see this case as an opportunity for this court to decide the tolling issue, not just for Mr. Adepo. But for others like him, who are pro se, who are trying to file an appeal from detention, and who end up filing a late appeal. What ends up happening is, and this happens all the time. Judge Lohier, you asked, where is the board's decision on equitable tolling? It's non-existent. Because they're all certification decisions. Because they substitute the discretionary authority, and it's a lesser authority, and it's limited in its context for judicial review. They sidestep that question. You heard what the government said. Why do they have to say this when it's so obvious to everyone that it's discretionary, and they never gave it? They never did it? That ignores all the Supreme Court precedent that says that is not obvious. The government would like this court to think that Congress has to explicitly say, hey, this is a deadline that's subject to tolling. But that is not what the Supreme Court says the test is. If you look to Holland, if you look to Henderson, silence is okay. There is a rebuttable presumption in favor of tolling in these instances. And particularly, if you look at Auburn Regional, where Justice Sotomayor says, and you should particularly apply equity in cases where there's a vulnerable population or an unsophisticated litigate. And that's what we have in this immigration context. We have people who are locked up, who are trying to file appeals pro se, and who get a lesser form of relief and review. Because the board has taken it upon itself to apply the certification regulation, and it has ignored time and time again. I can tell you, as amicus, the board will ignore the argument that the deadline should be tolling. They have done it before, they have done it in this case, but this case presents an opportunity. And I would- What is the standard for equitable tolling? What is it again? It's due diligence and extraordinary circumstances. So, with respect to the due diligence part, there's a reference to Lozada. Why isn't that, in effect, a replacement for the due diligence requirement? Because due diligence requires the board to have looked at what petitioner did in order to pursue his appeal rights. The person he ultimately hired was not a lawyer, so- He got defrauded, and not just that. But right after the deadline, he started filing things pro se, and the board misconstrued those things and decided not to recognize that this is a pro se individual who's trying to preserve his appeal rights. What does due diligence mean? Due diligence means that you have to have pursued your rights, that you don't sit on your rights, that you don't sort of have an awareness and do nothing about it. Mr. Adepo had an awareness, and he did everything he possibly could from detention to pursue those rights. In fact, the first letter he sent was rejected, was very close to the deadline, a day or so after it, wasn't it? Absolutely, it was two days after the deadline, which was August 8th, I believe. And lastly, I would say that another reason that this court can decide this issue and sort of make the board recognize that this concept exists in Supreme Court case law, is if you look at footnote one of the Luna decision, you don't need to sort of follow the ordinary remand rule. The Luna? Of the Luna decision, footnote one, you don't need to follow the ordinary remand rule when it's not primarily committed to the BIA's discretion. And in this case, jurisdiction is not primarily committed to the board's discretion. And also, when the board has had ample opportunity to address this issue. And as amicus counsel, I can tell you that the board has had ample opportunity to address this issue, and it will sidestep this issue time and time again. So for that reason, we ask the court to address it. Thank you all. Very good argument. Can I ask a question? Yes. So, at the end of the BIA opinion, it says we do not, this is page four of the special appendix. We do not consider the respondent's attempts to locate assistance in filing his appeal. And the alleged associated difficulties to constitute an exceptional circumstance where the appeal was filed over two months after the filing deadline. The problem with that is we don't know what the board thinks constitutes an exceptional circumstance. That's an amorphous term. Isn't that the point? That in one sense, it is amorphous. There are no standards, and therefore, it's committed, I'm just asking the question, because it's a little unusual, but therefore, it's committed to the BIA's discretion. It's, ironically, the lack of standards that- I'm not arguing that certification under this sort of regulation- But even on the equitable tolling side. Equitable tolling is a completely distinct judicial concept from this regulation that exists. That's actually like the board's kind of en banc equivalent. It's meant for IJs and boards, the board itself, to kind of pick cases and issues that are important that they think the board needs to weigh on. It was never designed to be an avenue that's available for a litigant. You seem to acknowledge that there is a lack of standards, in part because they put everything in the self-certification basket. Yeah. But if there is a lack of standards, what do we draw from the lack of standards in these BIA cases where there's a possible equitable tolling claim? What do we draw with respect to our jurisdiction to review its decisions? Well, we understand that when the case comes before this court on the denial of a certification, the court's review is Cabin to Villa Estrada, and I would say this court's decision in Mahmood, right? So it's a more limited form of judicial review. First is the judicial review that's available to a litigant who tried to meet the standard for tolling and was unsuccessful. May I offer, would you say that if the board were put to the standard of accountability created by requiring a reasoned explanation of what is exceptional circumstances in the equitable estoppel context, which it is not put to in the discretionary review self-certification process, that you might have developed standards more in line with what courts have done in equitable estoppel and regular statutes of limitations, and therefore relying on an overnight air carrier to deliver according to its announced schedule, and it doesn't make that schedule, or blizzards, or unable to get to a library, whatever. Then you would have a more reasoned kind of history of what constitutes exceptional circumstances, but that rigor has been missing because of the absence of review in the certification process. And so I would say to that that the board doesn't need to do that with respect to a discretionary regulation, when there's a whole body of case law that already defines what an exceptional circumstances is in the tolling context. And the second thing I would point out to you is if you're remanded to do that, I don't know what the board's going to do, but what the board usually does is then say, we think that this merits certification, so we don't have to decide this issue. And now, after Mr. Adepow has sat in jail for three years, he's going to get his appeal adjudicated. So would you say that court decisions about circumstances meriting equitable tolling in statutes of limitations of various stripes would inform the board's exercise of recent decision making here? In equitable tolling. If the deadline- But there are standards. So what you are saying there is there are standards, but the BIA hasn't developed them itself. But they don't need to develop them because the circuits have developed them and the Supreme Court has developed them. And that is the body of case law that the court can draw on and apply. It doesn't need to create something special. As to develop them in the context of equitable tolling, but in the context of equitable tolling for these types of cases? For, I mean, the concept of equitable tolling, as Judge Sotomayor said in Iovorsky, immigration provides no special status when it comes to equitable tolling. There's nothing special about how you apply equitable tolling just because it's an immigration case. This isn't a filing deadline. And in Henderson, Justice, the Supreme Court unanimously said that filing deadlines are quintessential claim processing rules and subject to equitable exceptions. Equitable tolling applied in Henderson. It applied in Holland. And for the same, very same reasons, if you look at that Supreme Court analysis and you apply it to the regulation, it is quite clear that the regulation is subject to equitable tolling. So you could have a remand and the BIA could provide us with a reasoned explanation for denying equitable tolling that is, among other things, just says, we will adopt the Supreme Court's view, but in this case, your client doesn't satisfy. Well, and that's a battle that we could fight, right? Well, not your client. For another day. But I would bet my bottom dollar that the board would know that that case would come back before this court and they don't want to deal with it. They'll do what they do in every single other case and just grant certification. Even after they denied it in this case? Even after, that's happened before. Like in this court's decision in Sun, I believe it was, where the court said, hey, you didn't consider these equitable exceptions. We're going to send it back down to consider the equitable exceptions. Guess what the board did on remand? It applied its certification authority. It never addressed the issue. Rather than look at the issues of due diligence and circumstances, whatever. Failure to get an attorney, a meritorious claim, arguably. Rather than analyze those, they would just say, well, we'll certify this. I mean, I can't predict, I don't have a, to see what they would do, but that is what they have done in other cases. Well, then he gets to make his case, though. He gets to make his case, but he also has a very meritorious appeal. This man who's been locked up who has a conviction that is not an aggravated felony. And what we need to happen for Mr. Adepo is for the board to be able to look at the merits of the case, send it back down to the immigration judge so he can apply for the relief that he should have been able to apply for. How long has he been detained now? Three years. That's a long time, two and a half, since the board failed to construe its pro se filings as a notice of appeal. Thank you. Thank you all. Very lively argument.